IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES "JIM" CORNETTE, <br><br> Plaintiff, <br><br> v. <br><br> BRANDON GRAVER, et al., <br><br> Defendants | : <br> : <br> : <br> : No. 3:19-cv-00219-KRG <br> : <br> : <br> : <br> : <br> : <br> : |

**BRIEF IN SUPPORT OF DEFENDANT SHOPIFY INC.'S
MOTION TO DISMISS AMENDED COMPLAINT**

**I.   INTRODUCTION**

In this trademark infringement action, Plaintiff James "Jim" Cornette alleges that Defendants Brandon Graver, William J. Molnar, Jr., and The Indy Connection, Inc. sold t-shirts bearing Cornette's name, image, and likeness—which he contends constitute a protected mark—and registered an internet domain address using his name without consent.  Along with the direct sellers of the allegedly infringing t-shirts and the registrant of the website, Cornette also sued Shopify Inc. ("Shopify")—a cloud-based commerce platform that provides website services for small and medium-sized businesses—and its subsidiary Shopify (USA) Inc.[1]

Recognizing neither Shopify entity actually sold the allegedly infringing t-shirts, Cornette does not allege Shopify directly infringed his alleged trademark.  In fact, the Amended Complaint lacks any specific factual allegations of alleged wrongdoing by Shopify.  Instead, Cornette's basis for suing Shopify is his contention that Shopify "hosts" the Indy Connection's website from which the other defendants sold the offending t-shirts.  [Am. Compl. ¶ 33].

---

[1] Shopify USA is filing a separate motion to dismiss, including for lack of personal jurisdiction.

Cornette's failure to plead any direct conduct by Shopify with respect to the allegedly infringing merchandise and website dooms each of his claims and demonstrates why the Amended Complaint should be dismissed with prejudice.

The only claim asserted specifically against Shopify is Count V for violation of Pennsylvania's "right-to-publicity" statute. This count fails to state a claim against Shopify because, as conceded by Cornette, Shopify did not actually use Cornette's name or likeness, an essential element to establishing liability. With respect to the remaining claims, even if they could be considered asserted against Shopify (although not pleaded as such), these counts likewise must be dismissed for the same fundamental reason: Shopify did not make, sell, or otherwise use Cornette's alleged mark.

Therefore, the Court should grant Shopify's motion. Because Cornette cannot—and indeed did not—remedy these legal deficiencies by amendment, the Court's dismissal should be with prejudice. *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (dismissal with prejudice appropriate if amendment is futile); *Boyles v. Am. Heritage Life Ins. Co.*, No. 3:15-cv-274, 2016 WL 4031295, at *10 (W.D. Pa. July 26, 2016) (Gibson, J.).

## II.  FACTUAL BACKGROUND

### A.  Shopify Inc.

Shopify Inc. is a cloud-based commerce platform which helps more than a million "merchants" (primarily small and medium-sized businesses) design and manage stores across multiple sales channels including web, mobile, social media, marketplaces, brick-and-mortar locations, and pop-up shops. [Am. Compl. ¶ 32; *see also* Hartman Declaration ¶ 8, attached to Shopify USA's motion to dismiss as Exhibit A]. Shopify USA is a subsidiary of Shopify Inc. that operates marketing applications for certain merchants who independently choose to install and utilize the applications. [Ex. A ¶¶ 8, 11].

2

According to the Amended Complaint, the Indy Connection is a business operated by William Molnar.  Cornette alleges the Indy Connection offers merchandise for sale online using a website powered by Shopify (theindyconnection.com), and that a second website (www.clownette.com) redirected browsers to a particular product listing on theindyconnection.com.  [Am. Compl. ¶¶ 28, 52].

### B.  Cornette Complains About Conduct Lacking Any Direct Connection to Shopify.

The claims here arise from Cornette's belief that his name and likeness—although not federally registered as a trademark—have been infringed by Indy Connection, Graver, and/or Molnar (not Shopify) in connection with several parody t-shirts allegedly sold by them.  The Amended Complaint is bare of any specific facts linking Shopify to the purported wrongdoing; Cornette does not plead that Shopify used the alleged mark in commerce or advertising, or aver that Shopify sold, created, or marketed the t-shirts.

The lawsuit started as a social media dispute.  According to the Amended Complaint, Cornette "tweeted" about an injury Graver sustained when a fluorescent light bulb sliced his arm during a wrestling match.  After a back-and-forth of insulting jabs on Twitter, Cornette alleges he "was made aware of a t-shirt" being sold on the Indy Connection's website depicting his likeness "with tattoo needles protruding from his forehead, his eyes covered with bloody Xs and his mouth gagged," and the words "Fuck Jim Cornette" under the image.  [Am. Compl. ¶ 43].

Cornette alleges that he complained to "Shopify and/or Shopify (USA)" about two listings for the offending t-shirt and that after each complaint the offending t-shirt "was removed from the web site."  [*Id.* ¶¶ 44, 46].  Cornette further alleges that the Indy Connection website then began offering the same t-shirt but with different wording ("Mother Fucker") around the image.  [*Id.* ¶ 47].  The Amended Complaint claims that "[p]urchasers can reach the t-shirt by typing www.fuckjimcornette.com" [*id.* ¶ 48], a domain name registered in September 2019 [*id.*

3

¶ 29]. In a footnote, Cornette admits this website is "parked" at GoDaddy.com, and not Shopify. [*Id.* ¶ 29 n.2]. The Indy Connection also applied to trademark the phrase "Fuck Jim Cornette." [*Id.* ¶ 30].

On March 4, 2020, Cornette filed an amended complaint to assert claims concerning a third t-shirt allegedly using Cornette's image and the word "Clownette," which he contends began shipping on January 16, 2020. [*Id.* ¶ 50].

Cornette alleges the three t-shirts and the "fuckjimcornette.com" website violate his claimed trademark rights, and asserts six claims for relief against all defendants. Conspicuously missing from the Amended Complaint—like the initial one—is any allegation that Shopify actually <u>sold</u> the allegedly infringing t-shirts, <u>used</u> Cornette's purported trademark, or, for that matter, had any direct involvement in the complained of conduct.

As a result, none of Cornette's claims state a viable legal theory against Shopify, and the Court should dismiss the Amended Complaint against Shopify with prejudice.

### III. ARGUMENT

#### A.   Legal Standard – Rule 12(b)(6) Motion

The Court is well acquainted with the standard for a Rule 12(b)(6) motion to dismiss. In considering Shopify's motion, the "court is not opining on whether the plaintiff will be likely to prevail on the merits; rather . . . the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff" to determine if Cornette pleaded a plausible claim for relief. *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 708–09 (W.D. Pa. 2015) (citing *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)). A plaintiff like Cornette must "provide more than mere labels and conclusions" to survive a Rule 12(b)(6) motion. *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 760 (W.D. Pa. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (a "formulaic

4

recitation of the elements of a cause of action will not do"). Instead, Cornette must allege facts that "raise a right to relief above the speculative level" that are "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

### B. Count V, The One Count Asserted Against Shopify, Fails To State a Claim.

Of the six claims in the Amended Complaint, Plaintiff specifically identifies Shopify in only one—violation of Pennsylvania's right-to-publicity statute, 42 Pa. C.S.A. § 8316. The entirety of Plaintiff's allegations against Shopify in support of this claim is that Shopify "used Plaintiff Jim Cornette's name and/or likeness for commercial and/or advertising purposes." [Am. Compl. ¶ 86]. But Plaintiff has not pleaded, and cannot plead, any facts establishing that Shopify actually "used" his image or likeness for a commercial and/or advertising purpose, and therefore this claim should be dismissed.

Pennsylvania's right-to-publicity statute provides: "Any natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose without the written consent of such natural person . . . may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 Pa. C.S.A. § 8316(a). The statute provides "immunity" for businesses like Shopify which "publish[] or disseminat[e] material for commercial or advertising purposes by any communications medium" and requires "actual knowledge of the unauthorized use of the name or likeness of a natural person as prohibited by this section" as a prerequisite to imposing liability on such a defendant. *Id.* § 8316(d).

As explained by the Third Circuit, Section 8316 "is meant to protect a citizen's prerogative not to have his or her name, likeness, voice, or identity used in a commercial advertisement, whether that citizen is a celebrity or not." *Facenda v. N.F.L. Films, Inc.*,

5

542 F.3d 1007, 1032 (3d Cir. 2008).  It "focuses solely on the commercial-advertising context [and] is targeted at endorsements, not the full universe of creative works." *Id.*; *see also* 42 Pa. C.S.A. § 8316(e).  Thus, the statute specifically excludes "expressive work" from its definition of "commercial or advertising purpose."  42 Pa. C.S.A. § 8316(e).

Plaintiff's claim against Shopify fails for three separate reasons.

First, Shopify did not "use" Cornette's name or likeness in any fashion, let alone for any commercial or adverting purpose.  There are no allegations that Shopify sold the offending t-shirts or registered the website www.fuckjimcornette.com—and it did not.  Instead, Cornette concedes Shopify had no involvement in the offending website, stating in a footnote "the domain name is currently parked at GoDaddy.com," and alleging the Indy Connection, not Shopify, attempted to trademark the word mark "Fuck Jim Cornette."  [Am. Compl. ¶¶ 29-30 & n.2; *see also id.* ¶ 79 (alleging Molnar and Indy Connection registered the website)].  Cornette does not contend that Shopify made the t-shirts or placed Cornette's alleged mark on them.  In short, Cornette makes no allegations that Shopify affirmatively used his name or likeness in any fashion.  *See generally Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *9-10 (S.D.N.Y. Sept. 30, 2019) (dismissing claims for direct trademark infringement because Shopify did not use the mark in commerce).  Lacking this threshold requirement, this Count should be dismissed against Shopify.

Second, the t-shirts that purportedly used Cornette's image and likeness are creative works and, by statutory definition, not used for commercial advertising or endorsement purposes.  Again, there are no allegations (nor could there be) that Shopify used Cornette's name or likeness in any way, let alone in connection with advertising Shopify's services.  In direct contrast to those courts finding liability under this statute, *see, e.g.*, *Facenda*, 542 F.3d at 1032,

6

here Cornette's image and likeness were not used to promote or advertise anything, including by Shopify. Rather, any use of Cornette's name or likeness—by defendants other than Shopify— was as a parody in an expressive work and therefore not actionable. *See* 42 Pa. C.S.A. § 8316(e)(2)(iii).

Third, even assuming Cornette's image could be considered used in a "commercial" context, Shopify is immune from liability because Shopify did not have actual knowledge of the alleged unauthorized use. *See* 42 Pa. C.S.A. § 8316(d). Cornette did not, and cannot, plead facts that could demonstrate Shopify had actual knowledge of the allegedly offending conduct. The absence of these facts makes sense: Shopify merely powered the website through which the t-shirts were offered for sale, along with hundreds of thousands of other merchant websites. Moreover, Cornette alleges that after he complained to Shopify about the t-shirts, the t-shirts were removed from Indy Connection's website. [Am. Compl. ¶¶ 44, 46]. Accordingly, Cornette cannot plausibly claim Shopify "had actual knowledge of the unauthorized use of" his image or likeness and allowed the alleged infringement to continue. 42 Pa. C.S.A. § 8316(d).

Any of these reasons is sufficient to grant Shopify's motion to dismiss, and the Court should dismiss Count V with prejudice.

    **C.**    **Even if Directed Against Shopify, the Remaining Counts Are Legally Deficient Because Shopify Did Not Engage in Infringing Conduct.**

To reiterate, the Amended Complaint does not even mention Shopify by name in Counts I–IV and VI. Thus, Cornette could not possibly have adequately pleaded a claim under these counts against Shopify when he did not allege any facts involving Shopify. Nevertheless, even assuming Plaintiff meant to assert them against Shopify, these claims also fail for the simple reason (among others) that Shopify did not sell or offer for sale the offending t-shirts or register the offending domain name.

1. **Count I:  Lanham Act Unfair Competition Claim.**

Under the Lanham Act,

> "[a]ny person who, on or in connection with any goods or services, or any container for goods, **uses** in commerce  any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection , or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis added).  To prevail on a claim for trademark infringement or unfair competition,[2] Cornette must establish three elements: (1) his alleged mark is valid and legally protectable; (2) he owns the mark; and (3) the defendant's use of the mark to identify its goods and services is likely to create confusion[3] concerning the origin of those goods or services. *Commerce Nat'l Ins. Sers., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

Where the mark at issue has not been federally registered—like Cornette's name here— its "validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Commerce Nat'l*, 214 F.3d at 438.  Personal name trademarks are not descriptive or suggestive and acquire their value from secondary meaning. *Robin Woods, Inc. v. Woods*, 815 F. Supp. 856, 870 (W.D. Pa. 1992).  Secondary meaning exists when the mark is

---

[2] "We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

[3] The Third Circuit employs a ten-factor test to assess the "likelihood of confusion" element. *Interpace v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983); *A & H Sportswear, Inc.*, 237 F.3d at 216.

interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services. *Commerce Nat'l*, 214 F.3d at 438 (quotation and citation omitted).[4]

Here, any attempt by Plaintiff to assert a claim for trademark infringement or unfair competition under the Lanham Act against Shopify fails: Shopify did not use the unregistered mark in commerce.

Again, Cornette does not allege that Shopify affirmatively used his alleged trademark in any way. Cornette does not contend that Shopify (1) made the t-shirts in question, (2) placed his mark on the t-shirts, or (3) registered the offending website (which he admits is "parked" at a third party web registrar and registered by another defendant). Nor does Cornette plead that Shopify sold its services by using his marks, or that his marks were used "in connection with selling or advertising [Shopify's] web hosting[, e-commerce, or online] services." *Lopez*, 2019 WL 5199431, at *10 (citing *Franklin v. X Gear 101, LLC*, 2018 WL 3528731, at *10 (S.D.N.Y. July 23, 2018)).

Thus, Shopify cannot be directly liable for any claim of trademark infringement or unfair competition under § 1125(a). The Court should dismiss Count I with prejudice. *See, e.g.*, *Howard Johnson Int'l v. Vraj Brig, LLC*, 2010 WL 215381, at *5–6 (D.N.J. Jan 14, 2010); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) (purported sale of counterfeit goods by users of its website was not a basis for a claim of direct trademark infringement against eBay); *Sellify Inc. v. Amazon.com, Inc.*, 2010 WL 4455830, at *2 (S.D.N.Y. Nov. 4, 2010) (finding, where "[t]he undisputed evidence shows that Cutting Edge, not Amazon, designed and purchased the ads at issue . . . Amazon cannot be subject to direct liability under the Lanham

---

[4] The Third Circuit has developed a non-exhaustive list of 11 factors to determine secondary meaning. *Commerce Nat'l*, 214 F.3d at 438.

Act"); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010) (finding no proof defendants "actually 'used the mark in commerce'" because "[k]nowledge alone of another party's sale of counterfeit or infringing items is insufficient to support direct liability, and there are otherwise no factual allegations that [defendants] themselves advertised or sold infringing goods").[5]

### 2. Count II:  Lanham Act Trademark Dilution Claim.

In his second count, Cornette asserts a claim for trademark dilution under the Lanham Act.  The Lanham Act provides:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences **use** of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (emphasis added).  A "famous mark" is a mark that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  *Id.* § 1125(c)(2)(A).[6]

A famous trademark can be "diluted" by either blurring or by tarnishment.  Dilution by blurring occurs when the similarity between the famous mark and another a mark or trade name "impairs the distinctiveness of the famous mark" as assessed by evaluating five factors.  *Id.* § 1125(c)(2)(B).  On the other hand, dilution by tarnishment occurs when the similarity between a famous mark and another mark or trade name "harms the reputation of the famous mark."  *Id.*

---

[5] Additionally, Plaintiff cannot demonstrate a likelihood of confusion because the t-shirts here were created as a parody.  *World Wrestling Fed'n Entm't Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 438 (W.D. Pa. 2003).  In any event, Plaintiff copied one of the t-shirts at issue and offered that shirt for sale on his own website.  [*See* Doc. No. 8 at 7 n.9 & Ex. 2].

[6] As with other elements in a Lanham Act claim, a multi-factor test is used to determine if a mark is famous.  15 U.S.C. § 1125(c)(2)(A).

§ 1125(c)(2)(C). Here, Cornette attempts to invoke both, pleading generally that the "use is likely to cause, and in fact has caused, dilution . . . by impairing the distinctiveness, and harming and tarnishing the reputation, of Plaintiff's marks." [Am. Compl. ¶ 75].

Here, Shopify is not alleged to, and did not, use the alleged "famous"[7] marks. Accordingly, by definition, Shopify could not have violated by Lanham Act by diluting Cornette's marks. Failing to satisfy this statutory prerequisite, Count II cannot stand against Shopify and should be dismissed.[8]

    3.    **<u>Count III: Lanham Act Cyberpiracy Claim</u>.**

In Count III, Cornette complains about the registration of the website www.fuckjimcornette.com and requests an injunction and damages against "Defendants" for any "revenues and profits as a result of their use of the offending domain name." [Am. Compl. ¶ 83].

A person can be liable for cyberpiracy under the Lanham Act if, with "a bad faith intent to profit" he or she "registers, traffics in, or uses an internet domain name" that is: (1) identical or confusingly similar to a distinctive mark; (2) identical, confusingly similar, or dilutive of a famous mark; or (3) "is a trademark word, or name protected by reason of section 706 of Title 18 or Section 220506 of Title 36." 15 U.S.C. § 1125(d)(1)(A).[9] This statute "was intended to prevent 'cybersquatting,' an expression that has come to mean the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to profit

---

[7] Cornette failed to plead facts that would demonstrate his name, image, and likeness constitute a "famous mark." Although Plaintiff self-describes himself as "a professional wrestling living legend" [Am. Compl. ¶ 7], missing are any facts that could show Cornette was famous throughout "the general consuming public of the United States," as opposed to well-known within a small niche community. 15 U.S.C. § 1125(c)(2)(A).

[8] As with Count I, Count II also fails to state a claim because the t-shirts allegedly sold by the other defendants were a parody. *World Wrestling Fed'n*, 280 F. Supp. 2d at 442, 443 ("[A]rtistic parody which satirizes [a] plaintiff's product or its image carries the free speech protections of the First Amendment.").

[9] Section 1125(d)(1)(B) lists nine factors to determine whether a domain name user had the requisite "bad faith" under the Lanham Act.

from the goodwill associated with those trademarks.'" *Pa. Bus. Bank v. Biz Bank Corp.*, 330 F. Supp. 2d 511, 524 (E.D. Pa. 2004) (citing *Shields v. Zuccarini*, 254 F.3d 476 (3d Cir. 2001)).

Crucially, under § 1125(d)(1)(D), only "the domain name registrant or [the] registrant's authorized licensee," can be liable.  Cornette does not allege that Shopify is the registrant of the offending website—admitting www.fuckjimcornette.com is "parked" at GoDaddy.com—and instead pleads that Indy Connection and Molnar registered the website.  [Am. Compl. ¶¶ 29-30 & n.2, 79, 85].  And Shopify is undisputedly not the registrant of "fuckjimcornette.com," nor its authorized licensee.  The Court should dismiss Count III for cyberpiracy.[10]

4. **Counts IV and VI:  Common Law Claims.**

Plaintiff's common law claims fare no better.  His common law trademark infringement, unfair competition, and dilution claims in Count IV fail for the same reasons that Plaintiff's related Lanham Act claims fail:  a party cannot be liable for infringement or dilution when it is not alleged to, and did not, engage in the wrongful conduct.

Further, Plaintiff's alternatively pleaded conspiracy claim (Count VI) must be dismissed because there is no viable underlying tort or statutory claim asserted against Shopify.  *See, e.g.*, *Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Super. Ct. 2013); *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) ("[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.").

\* \* \*

---

[10] Of course, it is highly unlikely internet shoppers looking for "jimcornette.com" would confuse that domain name with "fuckjimcornette.com," which is clearly a parody. *Contra Pa. Bus. Bank*, 330 F. Supp. 2d at 525 (finding that "bizbank.com" was identical to Plaintiff's mark "BIZBANK").

Therefore, even if Cornette's lumping together of the "Defendants" collectively could be deemed sufficient to assert the other five counts against Shopify, all claims are insufficient and should be dismissed with prejudice.

## IV. CONCLUSION

Cornette brought this action against Shopify presumably looking for a deep pocket to cover the cost of bringing his cage match with the other defendants into this Court. But to step into this ring, Cornette must come equipped with sufficient facts to demonstrate a plausible claim that Shopify violated the Lanham Act, Pennsylvania's right-to-publicity statute, or Pennsylvania common law. The Amended Complaint does the opposite and demonstrates why Shopify cannot be held liable. Quite simply, because Shopify did not itself sell the offending t-shirts or register the domain name, and because the offending t-shirts were removed from Indy Connection's website once Shopify was notified of them, Cornette has no plausible claims.

Therefore, Shopify respectfully requests that the Court grant its motion and dismiss the Amended Complaint with prejudice.

STEVENS & LEE, P.C.

Date:  March 12, 2020

By: */s/ Julie E. Ravis*
Julie E. Ravis (PA 203101)
111 North Sixth Street, P.O. Box 679
Reading, Pennsylvania  19603
Telephone:  (610) 478-2077
Facsimile:  (610) 371-7747
E-mail:  jera@stevenslee.com

*Attorneys for Defendant Shopify Inc.*